Our next case is WAG Acquisition v. Google, et al., 2024-1630. Mr. Abramson again. Welcome back, Mr. Abramson. Nice to see you again. Nice to see you, Judge Wallach. Judge Lurie and Judge Shen, may it please the Court. This one only involves one IPR. Only one IPR was instituted on the 594 patent. So the claims at issue in this appeal address the client side. The one we just heard addressed the server side of the streaming. This addresses the client side. What is the process that the client carries out in order to stream? Based on a player device making repeated requests by specific element identifiers to an Internet media source for successive media elements while managing a buffer of the elements being received. That's the subject. Let me ask you about timely delivery. About, sorry, what? Timely delivery. In your opening brief, you argued that a person of ordinary skill in the art wouldn't extend Aroni's use of reliable protocols, such as TCP, to all frames because reliable protocols don't guarantee timeliness. And untimely delivery, I'm quoting, of streaming media frames means dropouts, and dropouts are contrary to the object of the claimed invention. How can it be that reliable protocols are untimely and untimely delivery leads to dropouts? Don't reliable protocols guarantee delivery? They guarantee delivery, but not when it gets delivered. Do the claims require timely delivery? Absolutely, because if you're listening, if you're watching a video, if there's a big delay and a frame is getting delivered, you get a blank screen. You get a dropout. Doesn't claim five require the use of the TCP protocol? What? TCP protocol. Yes, claim five claims the use of the TCP protocol. Isn't that a protocol which was known not to guarantee timely delivery? It was a protocol that was, none of these protocols were known to guarantee timely delivery. The question is how to get it to work, right? The way you get it to work is you pre-establish a buffer, right? But nothing on the Internet guarantees timely delivery. It's the nature of the beast. So a reliable protocol just says you're going to get everything, and you're going to get it in order, but it may be two days from now. It's not necessarily going to be in the next 30th of a second when you need the next frame in the video. That's the difference there. So in this appeal, we're talking about Hill, and whether Hill, we switch from Carmel to Hill, whether Hill disclosed Internet request is claimed, or if not, whether modifying the reference in order to do so would have been obvious. Now, over the weekend, my adversary sent me an email notice that they may cite today the court's recent decision in Gardent versus University of Washington, which I'll address. It's not a precedential decision. It doesn't make new law. It relies on the same authority that we did in our brief, intelligent biosystems case, which was cited in our opening brief and also cited in Gardent. But I will say that the fact situation in Gardent, the recent decision in Gardent, does throw high beams on the question of the need to show reasonable expectation of success in an asserted obviousness combination. And I would agree that Gardent provides a useful framework for addressing that issue in this case. If it's non-precedential, you're basically wasting your time. I'm just saying it's a nice framework for analysis, but, of course, we rely on the cases that we cite. We don't have to go there, but it does provide a useful framework for analysis. And I'm not going to argue because of Gardent you have to decide you have to reverse. Intelligent biosystems is another story. One of the issues here concerns limitations A-1 and A-3. A-1 is sending requests from a meeting. For the independent claims, is the only claim limitation you dispute one A-3? Yes, that's correct. Okay. So without belaboring that, Google took the position that Hill straight out expressly disclosed in his petition that Hill's media player sent requests for serially identified media elements to an internet media source that housed media clips, where each request specified a clip number and a local frame number, and thereby specified one or more serial identifiers of the media data elements requested. That was their going-in position on the petition, express disclosure. Google's petition did not suggest that a positor would have to modify Hill's disclosure in this regard to arrive at the claimed invention. Are you talking about a person of skill in the art speaking English? Absolutely, a person of skill in the art. It was not to suggest that a person of skill in the art would have to modify Hill's disclosure in this regard. That wasn't the theory of the petition. It just presented Hill's description of the data fetches over the internet link as if that description also addressed what occurred over the external data link. You have a reference that has inside of a box a request mechanism, and the supposition here is that when it requests outside of the box, it's doing the same thing, but Hill doesn't actually say that. Where in your opening brief do you challenge the Board's finding that a person of skill would have been motivated to incorporate TCP as taught by Aroni into Hill? Say that again? Where do we challenge? Where in your opening brief do you challenge the Board's finding that an ordinary skilled person would have been motivated to incorporate TCP as taught by Aroni into Hill? I don't recall, Your Honor. I'm standing here. To be honest with you, I certainly argued it below. I don't recall where in the brief it is. I could respond back, but I don't want to spend time thumbing through my brief there. And also keep in mind that TCP in this case is talking about... You can look up Blue Brief 35 to 38. Pardon me? You argue there that the Board erred as to claims four and five because there's no substantial evidence that Aroni teaches using TCP to stream... Oh, there's no substantial evidence that Aroni teaches TCP because it teaches away from TCP. But the Board's determination doesn't rest on Aroni alone, does it? And that's where I ask that question. I'm sorry. I think it primarily did to the extent... I don't recall whether there was something else in the Board's decision on this, on that claim. The Board found that an ordinary skilled person would have been motivated to incorporate TCP as taught by Aroni into Hill. You agree with that? Sorry, the Court found that what? That an ordinary... I'm hard of hearing myself. Okay. That an ordinary skilled person would have been motivated to incorporate TCP as taught by Aroni into Hill. Well, first of all, as we argued, Aroni didn't teach to use TCP. And secondly, was there an argument in the petition explaining how an ordinary person of ordinary skill in the art would have been motivated to make that combination? I don't believe there was. People didn't send video using TCP? People didn't use TCP to send video? People, if you look at Aroni, they say TCP's got a problem. There's TCP and there's UDP, right? TCP has a three-way handshake. UDP doesn't. UDP just sends packets. They get there or they don't get there. TCP worries about whether they get there. It sends the key frames by TCP, right? Pardon me? Aroni sends the key frames by TCP? It sends only the key frames by TCP. The board here found that all frames in Hill's system are key frames, right? You could argue that all frames in Hill's system are key frames, correct? I don't understand your argument that Aroni teaches away from Hill's system sending the video using the very common, well-established TCP protocol. Could I address other points here, Your Honor? Let me think about that. Okay. Okay. Let me think about that because my time is going here. And that's on a dependent claim, as I recall. I'm trying to address the independent claim, claim one. And the question there, to cut to the chase on that, is that the board found, as to what Hill disclosed, the board found that Hill does not specify precisely what is sent in the request to the external source. That's a key finding because that was their theory. Hill did specify that. That was their theory. The board said no. It would be obvious to use the local frame numbers. Right. The board went on to say it would have been obvious. Because that's the way it's stored in Hill's server, by local frame numbers. That is the way it could be stored. Hill didn't say anything about how its server stored this data, okay? It was how the experts agreed that that's one way it could be stored, right? Hill doesn't address the external interface. So the board said it would have been obvious to request each frame, I'm quoting, from an external source using clip number and local frame number, because that's how the frames are stored at the external sources. That was the rationale of the board. And that's okay. Let's say we accept that. This question still is, where is the reasonable expectation of success? Why would – who said – who in this case said there would be a reasonable expectation of success in doing that? How does the idea of success play into any alleged error by the board? Say that again? I said how does this idea of success play into any alleged error by the board? Well, because in order to show obviousness of a combination in an unpredictable area, such as transmission over the Internet, you have to show reasonable expectation of success. That was the intelligent biosys case that we cited, that the recent case of Gordon cited. And that's necessary. That wasn't in the petition because the petition pursued an entirely different theory. The board came to that conclusion. Answer your rebuttal time. Pardon me? Answer your rebuttal time again. You can continue or save it. I'll just continue for 30 seconds, if that. The board concluded – the board did not accept Google's theory. It concluded that you'd have to do a modification to export that request mechanism to the external channel. And having gotten to the point where you need a modification, you need a reasonable expectation of success. It's not in the petition, nor is it in the board's – nor does the board explain how you deal with the unpredictability of the Internet in making that work. And that is a reversible flaw in this decision. I'll reserve the balance of my time. Mr. Gardner. Thank you, Your Honor. Eamon Gardner on behalf of Google. May it please the court. Respectfully, Your Honors, I think we've all seen final written decisions that don't address the evidence or perhaps don't fully analyze the party's arguments. This is simply not that case. WAG's arguments ignore the substantial evidence in the record and the fact that the board has already considered and rejected the very arguments that WAG is making in this case. The first thing I want to turn to is the arguments related to Limitation 1A3. And for Limitation 1A3, WAG has made the argument that there are somehow challenges about the Internet that would make – that would defeat an obviousness argument. The primary issue with WAG's argument is that this is not an obviousness issue. The board expressly found that Hill teaches doing requests over the Internet. So, for example, at Appendix 32, the board cites Hill's disclosure in Column 3, Lines 46 to 56, and you can find that at Appendix 978, where, and I quote from the board's decision, Hill expressly discloses the retrieval of video from sources over the Internet. That is not an obviousness issue. The board expressly found that Hill teaches requests over the Internet. They also make the argument – we do not reach petitioner's contentions that are allegedly based on expressed teachings in Hill because we are persuaded by the obviousness argument. Correct. And that relates to a separate issue, and that issue is whether or not it would be obvious from Hill to include the local frame numbers to the external source. And I think Judge Chen asked a very good question on this, and he asked, doesn't Hill say that? And my counsel said that Hill doesn't say, that Hill doesn't teach storing a clip using local frame numbers in the external source. But that's simply not supported by the record. The board actually cited Mr. Horady, WAG's expert, where he agreed that clips originate in external – I'm sorry, this is at Appendix 32, and it's, I quote, Mr. Horady agreed that clips originate in external sources and that local frame numbers are used to reference the position of a frame within the clip from which they originate. And the board cites to Mr. Horady's deposition testimony at Appendix 2655. So the issue here is it's undisputed that local frame numbers are used to reference a clip or a frame within a clip on an external source. And there was an obviousness argument where the board said it's not necessary to determine whether or not Hill expressly teaches that the local frame number would be included in the request because it's obvious that you would do so because that request is – because that's the same way they're referenced in the external source. Now, my co-counsel referenced the Gardent decision, and I just want to be clear as to the relevance of that. In the Gardent decision, what this court determined, and I understand it's non-precedential, but they said no motivation to combine or reasonable expectation of success is necessary when all of the teachings come from a single reference. And that's exactly what we have here. The obviousness determination by the board, this isn't a combination of two references. This is looking at a single reference and determining whether or not motivation to combine or reasonable expectation of success is from a – or, I'm sorry, whether obviousness is determined from a single reference, Hill only. As to the combination of two references, so that would go to the TCP issue that Your Honors asked questions about, there's been a number of arguments as to that, and one of the statements that my opposing counsel made is he said that there was no evidence in the record about the reasonable expectation of success in using TCP, and that is just clearly wrong. If we go to Appendix 40, the board states at the end of the paragraph, it says – I'll just go to the punchline. It makes the conclusion about the combination and says, and would have expected success in doing so. So the board addressed reasonable expectation of success, and then cites to Dr. Polish, Google's expert, at Appendix 840 to 841, where he explicitly addresses the reasonable expectation of success in making a combination between Hill and Aharoni for TCP. So when there was a combination of two references, there is no dispute that the board analyzed the reasonable expectation of success issue, and that there's evidence in the record supporting that finding. And that's all this panel needs in order to be able to affirm on a substantial evidence record. There was a couple other questions that I do want to briefly address. There has been a lot of arguments about this timely delivery, and I think my counsel said that this is required by the claims, and we don't see that. And I think Judge Wallach's questions were very accurate in that they say TCP doesn't guarantee timely delivery and therefore falls outside of these claims, but Claim 5 recites that TCP is part of the claims. This concept of timely delivery is required just doesn't make any sense because it's explicitly part of their claims that TCP is part of the claims, and we all agree that TCP cannot guarantee timely delivery. And then finally, Judge Chen asked a few questions about the combination of Aharoni and Hill, and I do think that that's the important focus here for the TCP combination. And as Judge Chen pointed out, Aharoni teaches that you use TCP for keyframes. There was no dispute in front of the board below that Hill teaches that all frames are keyframes. So when you combine those two things together, you have the use of TCP for all frames in the combination of Hill and Aharoni. Unless you have any questions, I'll cede the rest of my time. Thank you, counsel. Mr. Abramson has a couple of minutes for rebuttal. Two and a half minutes. So I think we shouldn't get—as far as Claim 1 is concerned, we shouldn't be—TCP really isn't part of Claim 1. The question on Claim 1 we come back to is—and he went to garden in discussing this—is there a combination that has to be made? Hill—the board said, expressly said at page 32 of the appendix, that Hill doesn't specify precisely what is set in the request of the external source, and then said it would have been obvious to use the internally described mechanism externally, right? And so what about this concept of reasonable expectation of success? Garden doesn't do away with it. It just says that there has to be a combination left to the person of skill in the art to create. The person of skill in the art has to be put in the position of creating a combination in order for this requirement to apply. And in garden, the required combination was already found in the reference, and Judge Stoll in that discussion explained exactly, line and verse, how there was one sentence in the reference that already combined those two elements. It was there in the reference in the prior art. That's not the case here. The board said that it couldn't find full disclosure of the combined elements of the request limitations in the reference. It thus turned instead to a combination that it posited would have been obvious, but still thereby triggering a requirement of showing reasonable expectation of success. Since requisite showing of expectation of success was lacking in the petition itself, as well as in the board's decision, a reversal is mandated. Thank you, counsel. We have your cases submitted.